IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF NEW MEXICO

CLIFTON SKIDGEL,

      Plaintiff,

v.                                                                                                                 No. CIV 12-7 JP/LFG

MICHAEL MARTIN, SHERRY PHILLIPS,
and CORRECTIONAL MEDICAL SERVICES,

      Defendants.

**ORDER DIRECTING SUBMISSION
OF MARTINEZ REPORT**

THIS MATTER is before the Court on a *pro se, in forma pauperis* civil rights action brought under 42 U.S.C. § 1983. [Doc. 9, attached Complaint.] Plaintiff Clifton Skidgel ("Skidgel") alleges, *inter alia*, that Defendants violated his civil rights, including his Eighth Amendment right to be free from cruel and unusual punishment. Skidgel also contends he was improperly denied medical treatment and unduly harassed for bringing litigation. [Id.]

More specifically, Skidgel claims that Defendant Michael Martin ("Martin") ordered him and four other inmates to be placed in segregation on June 30, 2011 until July 6, 2011, "without any means to challenge the lockdown or the sanctions imposed." [Id., Complaint, at 2.] Skidgel asserts that he was subjected to arbitrary punishment and disciplinary sanctions in violation of his Fifth and Fourteenth Amendment rights, as well as violations of his equal protection rights and liberty interests. Skidgel contends that Defendants did not follow specific American Correctional Association standards and other pertinent policies or procedures.

1

Skidgel includes a lot of detail concerning his allegations, but the Court summarizes only a few of those allegations here. For example, Skidgel states that on occasion, instead of being placed in the prison's "general population," he landed in lockdown without a misconduct report or hearing. [Id., Complaint at 3.] Skidgel attempted to submit a disciplinary appeal on July 8, 2011, but the appeal was "destroyed."

On July 28, 2011, Martin "placed the institution on a restricted movement status to allow for a religious presentation by a well know [sic] celebrity causing a cancellation of a scheduled medical appointment (physical)." [Id.] Skidgel had waited for this medical appointment since June 9, 2011, well over a month, and had suffered pain during that time and for the next 4-6 weeks while he awaited another doctor's appointment. Skidgel contends this loss of a medical appointment for treatment of a great many injuries" violated his civil rights to treatment and provisions of policies.

According to Skidgel, Corrections Medical Services ("CMS") refused to provide adequate and proper medical diagnoses and treatment for Skidgel's many medical conditions, including "adrenal adenomas, osteopenia with minimal lumbar spondylosis, chronic obstructive pulmonary disease, compressed fracture deformity of vertebra L1, degeneration of L3-L4 vertebra, Levoscoliosis, degeneration (arthritic) left and right hip joints, BUN/Creat[inine] ratio in balance, a deformed and painful great toenail and glaucoma with cataracts." [Id. at 5.] Skidgel alleges CMS refused to replace a back brace he normally wore.

Skidgel seeks an award of "$100.00 a day for illegal segregation (7 days); $1000.00 per each constitutional violation; $100,000.00 from CMS for pain and suffering unnecessarily, or a jury trial on all counts." Skidgel is incarcerated at the Northeast New Mexico Detention Facility ("NENMDF") in Clayton, New Mexico.

On January 3, 2012, Defendant Martin answered Skidgel's complaint, denying most of the allegations. [Doc. 3.] Martin set out a number of affirmative defenses, including qualified immunity, New Mexico Tort Claims immunity, failure to exhaust administrative remedies and to provide proper notice of the tort claim in a timely fashion under the New Mexico Tort Claims Act, comparative fault on the part of Skidgel, comparative fault of other persons not party to the lawsuit, failure to mitigate his damages, failure to exhaust administrative remedies under the Prison Litigation Reform Act, and lack of subject matter jurisdiction over Skidgel's state law claims because of his failure to exhaust administrative remedies as required by NMSA § 33-2-11 (1978). [Doc. 3.]

On January 24, 2012, Defendants Sherry Phillips and CMS filed their Answer. [Doc. 9, attached Answer.] These Defendants raise a number of affirmative defenses as well, including failure to state a claim, failure to exhaust administrative remedies under NMSA § 33-2-11(B) as to the state law claims, lack of injury or damages as a result of these Defendants' acts or omissions, comparative fault or negligence of others, any damages were caused by the acts or omissions of third parties or an independent intervening cause, Skidgel's damages were caused by an unavoidable medical complication for which these Defendants are not responsible, failure to mitigate damages, Defendants' actions were reasonable and in good faith, and Defendants or their agents, etc. exercised the degree of care common to the medical community.

On January 24, 2012, Skidgel filed a brief, with exhibits, in support of his original Complaint. [Doc. 9, attached brief.] The lengthy brief rehashes some of the allegations in the Complaint, responds to parts of an Answer, and sets forth the law Skidgel believes is applicable. Skidgel further claims that from June 9, 2011 to August 22, 2011, he was refused treatment by a qualified health care provider.  Skidgel refers to many different grievances and complaints he filed.

He contends he exhausted administrative remedies and any requirements under the New Mexico Tort Claims Act. Attachments to the brief include notes or letters to staff or CMS concerning Skidgel's medical appointments and notice that he intends to seek litigation against CMS and the correctional facilities. Skidgel includes several Notices of Claim purportedly filed on August 24, 2011 and September 19, 2011 with Risk Management.

Skidgel also filed separate "responses" to Defendants' Answers on January 19, 2012 [Doc. 8] and January 24, 2012 [Doc. 9, attached response.] Skidgel's responses contain unsupported argument and references to legal authority. There is also a motion for production filed by Skidgel to which there was a response by Defendants Phillips and CMS. [Doc. 9, attached pleadings.] That motion will be addressed in a separate order.

The Court may order a defendant in a case brought by a prisoner proceeding *pro se* to submit a special report, a Martinez report, to investigate the incidents which form the basis of a plaintiff's lawsuit. Martinez v. Aaron, 570 F.2d 317, 320 (10th Cir. 1978). The Tenth Circuit has authorized the Court to require a Martinez report to develop the factual or legal basis for determining whether an inmate has a meritorious claim. *See, e.g.*, Gee v. Estes, 829 F.2d 1005, 1007 (10th Cir. 1987). The report may be used in a variety of procedural situations, including a motion for summary judgment. If a Martinez report is used for summary judgment purposes, however, the plaintiff must be given an opportunity to present conflicting evidence to controvert the facts set out in the report.

To assist the Court in evaluating the issue of exhaustion and the merits of Skidgel's various claims, Defendants are directed to prepare a report or reports addressing the following matters:

1. Provide a brief outline of pertinent dates concerning Skidgel's period of incarceration and his transfer to NENMDF.

2. Summarize claims brought by Skidgel and briefly set forth Defendants' applicable defenses to each claim.

3. <u>Segregation from June 30, 2011-July 6, 2011</u> (5th and 14th Amendment Due Process Claim)

   a. Provide a detailed description of what occurred with respect to the allegations that Skidgel was placed in lockdown or segregation during this time period.

   b. Provide all documents, reports, interviews, statements, and investigative results concerning the allegations that Skidgel was placed in lockdown or segregation at this time, including the reasons for that action.

   c. Provide a description of any and all process to which Skidgel was entitled regarding the lockdown.

   d. Provide copies of all standards, procedures, and prison requirements pertinent to Skidgel's allegations that he was denied due process with respect to the lockdown.

   e. Provide all grievances, complaints, responses to grievances, appeals concerning the lockdown, including an alleged disciplinary appeal dated July 8, 2011, that was purportedly destroyed, or reasons for its destruction. Also provide copies of pertinent procedures and policies concerning the filing of grievances and exhaustion requirements during the pertinent time frame, and whether Skidgel complied with those requirements.

   f. Respond to Skidgel's allegations that he was "refused a misconduct report and no hearing on the misconduct" in relation to the lockdown.

4. <u>Medical Appointment</u> (8th Amendment Cruel and Unusual Punishment Claim)

   a. Provide a detailed description of what occurred on July 28, 2011, in relation to Martin's alleged placement of the institution on a "restricted movement" for a religious presentation and Skidgel's scheduled medical appointment, what occurred as to the appointment, when it was originally scheduled, when it was re-scheduled, if true.

   b. Provide or describe all health-related services requested by Skidgel during the pertinent time frame, including the date of 2/19/10 (if pertinent to these Defendants), when Skidgel claims he began seeking re-evaluation for many medical issues.

      i. Provide copies of all health service request forms submitted by Skidgel during the pertinent time frame and responses to those requests, including those dated 9/26/09, 2/18/10, 5/19/11, 5/26/11, 6/17/11, 6/3/11, 6/27/11, 7/5/11, 8/1/11, 8/10/11, 8/18/11.

5

      ii. Provide copies of pertinent radiology or lab reports, including those dated 5/26/11, 6/17/11, 8/14/11, 8/19/11.

      iii. Provide pertinent appointment logs for physicians dated 7/11, for dental care dated 7/11, and the "medication administration record," dated 5/11.

      iv. Provide all records of treatment and medication prescribed to Skidgel and the results of such treatment.

      v. Describe any pertinent medical records that have been lost or that have been withheld from Skidgel, and the reasons why they were lost or withheld.

      vi. Provide all records of requests by Skidgel for a lower bunk bed and the response to his alleged requests.

      vii. Provide any requests by Skidgel for a back brace and the response(s) to such requests.

      viii. Provide copies of or describe any denial of treatment by a qualified health care provider to Skidgel between June 9, 2011 and August 22, 2011.

c. If not already supplied in response to the above requests, provide copies of all of Skidgel's medical appointments, medical notes and records, diagnoses, treatment, testing and test results during the pertinent time frame, including any denials of Skidgel's requests for medical care.

d. Provide all documentation pertinent to Skidgel's medical malpractice claim and the results of that proceeding.

e. Provide all pertinent regulations, procedures, or standards with respect to medical care to which an inmate is entitled.

f. Describe how many health care providers must be made available at NENMDF in accordance with pertinent contracts, regulations, standards, or requirements. Describe how many health care providers are employed at NENMDF and their availability.

g. Provide all grievances, complaints, responses to grievances, appeals concerning Skidgel's claims concerning medical appointments, conditions, and treatment.

      h.      Explain the result of Skidgel's notice on August 22, 20011 and August 26, 2011, that he was filing litigation, and whether Skidgel continued to obtain medical care after those dates.

      i.      Describe any alleged harassment or intimidation about which Skidgel complains as to Defendant Phillips.

5.    <u>Other Documents</u>

      a.      In a number of pleadings, Skidgel asserts that he "submitted his preliminary discovery of evidence to the Eight Judicial District Court January 3, 2012." [*See, e.g.,* Doc. 8, at 1.] "Plaintiff has filed with this Court (*i.e.,* State Court) Plaintiff's record of exhaustion of remedies, including all available grievances." [Doc. 9, attached Brief, at 2.] Provide all documents supplied by Skidgel to the Eighth Judicial District Court if they have not already been produced in this federal proceeding.

6.    <u>Affirmative Defenses</u> (by Defendant Michael Martin)

      a.      Provide any support Defendant Martin has to support the affirmative defenses set forth in the Answer. [Doc. 3, at 2-3.]

      b.      Specifically, describe which claims to which Defendant Martin is entitled to qualified immunity or immunity under the New Mexico Tort Claims Act and the reasons why he is entitled to immunity.

      c.      Identify Skidgel's state law claims and how he failed to exhaust pertinent administrative remedies under NMSA § 33-2-11.

      d.      Describe how Skidgel did not exhaust his administrative remedies under the New Mexico Tort Claims Act or the PLRA.

      e.      Describe comparative fault of Skidgel or others, who are not parties to this litigations, in relation to pertinent claims

      f.      Describe how Skidgel failed to mitigate damages.

7.    <u>Affirmative Defenses</u> (by Defendants Phillips and CMS)

      a.      Provide any support Defendants have to support the affirmative defenses set forth in the Answer. [Doc. 9, attached Answer, at 3-4.]

      b.      Describe how Skidgel did not exhaust his administrative remedies under NMSA § 33-2-11 or any other failure to exhaust remedies as to these Defendants.

  c.  Provide support regarding defense that Skidgel suffered no injuries as a result of these Defendants' acts or omissions.

  d.  Describe comparative fault of any party or non-party, or acts by third parties that proximately caused Skidgel's injuries or damages.  Include description of unavoidable medical complications asserted in Defendants' Answer, at ¶ 6.]

  e.  Describe how Skidgel failed to mitigate damages.

  f.  Describe how Defendants acted in good faith and in a reasonable manner regarding the pertinent allegation.

  g.  Describe how Defendants, and their agents, contractors, or employees, exercised the degree of care common to the medical community.

Defendants' Martinez report(s) must address each point set out above.  Documents in support of the report may be submitted simultaneously with the report, but the submission of documents alone, or documents submitted with an index but without an accompanying report, will not be in compliance with this order.  Defendants may submit affidavits in support of the report, if necessary.

The report(s) shall be filed and served on or before **April 23, 2012**.  Skidgel will have **thirty days (30)** from the date of service of the Martinez report to respond.  The parties are hereby given notice that the report may be used in deciding whether to grant or deny summary judgment on Skidgel's claims and civil rights complaint; thus, the parties should submit whatever materials they consider relevant to the claims.  *See* Hall v. Bellmon, 935 F.2d 1106 (10th Cir. 1991).

  IT IS SO ORDERED.

                *Lorenzo F. Garcia*
                Lorenzo F. Garcia
                United States Magistrate Judge