IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF NEW MEXICO

CLIFTON SKIDGEL,

    Plaintiff,

v.                                                                                                                           No. CIV 12-7 JP/LFG

MICHAEL MARTIN, SHERRY PHILLIPS,
and CORRECTIONS MEDICAL SERVICES,

    Defendants.

**ORDER ADOPTING MAGISTRATE JUDGE'S ANALYSIS
AND RECOMMENDED DISPOSITION**

THIS MATTER is before the Court on the Magistrate Judge's Analysis and Recommended Disposition ("recommendations") [Doc. 50], filed June 11, 2012, recommending that summary judgment be granted in favor of Defendants and that Plaintiff Clifton Skidgel's ("Skidgel") civil rights complaint, be dismissed with prejudice. After a thorough review of the pertinent law, Defendants' Martinez reports and evidence, and Skidgel's many pleadings and evidence, the Magistrate Judge concluded that Skidgel failed to present genuine issues of material fact with respect to any of his claims.

On June 21, 2012, Skidgel filed timely objections. [Doc. 51.] The Court conducted a *de novo* review of those portions of the Magistrate Judge's recommendations to which Skidgel objects.

**Skidgel's Objections**

Skidgel takes issue with a number of the Magistrate Judge's findings, but does not challenge the Magistrate Judge's summary of his claims or the Court's discussion of the pertinent law.

Skidgel's objections 1-7 [Doc. 51, at 1-5] generally concern his allegations that Defendant Michael Martin ("Martin") placed Skidgel in segregation from June 30, 2011 until July 6, 2011, for misconduct by Skidgel. In the recommendations, the Magistrate Judge addressed at length Skidgel's claims concerning the seven-day lockdown in July 2011. [Doc. 50, at 3-4, 9-18.]

In his first objection, Skidgel argues that the Magistrate Judge incorrectly found that Defendants provided medical and educational services during the seven-day lockdown. [Doc. 51, at 1.] Skidgel claims that Martin's affidavit testimony concerning this matter "is false" and that this incident resulted in Skidgel filing two grievances – "nos. 6 and 7." Skidgel further asserts that Martin's affidavit testimony that the July 2011 lockdown was not instigated to punish Skidgel is contradicted by the "unit lockdown schedule (Doc. 21, page 14) which clearly shows the punishment administered to [Skidgel] [was] for correction of behavior or disruptive security concerns . . . ." [Doc. 51, at 2.] Skidgel argues that "Evidence #7, page 2 (id doc 21, page 14) proves without question that these sanctions applied to Skidgel are punishment measures designed to correct behavior." [Id.]

Skidgel did not present any evidence to support his allegation that Associate Warden Martin's testimony was false concerning the services provided to inmates during the seven-day lockdown. Skidgel's conclusory allegations alone are insufficient to create a genuine issue of material fact. *See* EEOC v. C.R. England, Inc., 644 F.3d 1028, 1037 (10th Cir. 2011) ("unsupported conclusory allegations do not create a genuine issue of fact.") Moreover, the mere filing of grievances or complaints pursuant to the prison's administrative procedures, particularly filing grievances that lacked merit, does not constitute hard evidence sufficient to raise genuine issue of material fact for purposes of defeating summary judgment. In Escobar v. Jones, 2012 WL 426643, *5 (D. Colo. Jan. 19, 2012) (unpublished), the Court observed that the lack of evidence to support

a plaintiff's administrative grievances did nothing to advance the defendants' position on summary judgment. Consistent with Escobar, it follows that the mere filing of an unsuccessful grievance is not evidence sufficient to defeat summary judgment.

Moreover, the Court reviewed the grievance Skidgel identifies as No. 6. [Doc. 21-3, at 4.] While relating to an alleged incident occurring on July 5, 2011, Skidgel signed the grievance on August 31, 2011, complaining that during a segregation lockdown from 6/30/11 to 7/6/11, education staff refused to visit each cell "per handbook and policy." "Inmate could not access any legal materials due to this negligence. Unit visitation log will demonstrate no education staff visits." Skidgel provided an "Institutional Lockdown Form" for the period in question that indicates education services visited on July 5, 2011 at 1:44 p.m. [Doc. 21-3, at 10.] In addition, Skidgel produced a memo, dated September 28, 2011, from the education director to a corrections officer stating that during the "progressive modification lockdown contained in Housing 1E; the Education/ERC did conduct rounds with questions for each cell that was occupied with inmate Offender personnel." [Doc. 21-3, at 9.] The memo provides additional details concerning books that were delivered to inmates. The facility's investigation of Skidgel's grievance states that the Education Department made "regular rounds in the progressive lockdown pod" and documented each visit into the pod. The response further notes there were no corroborating complaints from other inmates during the lockdown that educational services were not provided. [Doc. 21-3, at 5.]

The Court also reviewed the "Unit Lockdown Schedule" that shows Skidgel's handwritten name at the top. [Doc. 21-1, at 14.] Skidgel claims this form indicates Martin administered punishment to Skidgel "for correction" of his behavior or disruptive security concerns . . . ." However, nothing on the Unit Lockdown Schedule supports Skidgel's summary contention that he was punished for misbehavior, nor does Skidgel identify any misconduct for which he was punished.

The form does not mention punishment or sanctions at all. It merely provides dates during the seven-day lockdown when showers were allowed, hot meals were provided, and visitors were or were not allowed, presumably for all inmates on lockdown.

The Court also examined the grievance Skidgel identifies as No. 7. [Doc. 21-3, at 13-21.] In this grievance, signed August 31, 2011, Skidgel complained that the medical staff refused to make required cell checks, apparently during the lockdown. CMS's response to the informal complaint indicated that during the lockdown, the medical department gave medications to the inmates who were supposed to receive medications. Skidgel had "keep on person" medications that he received on July 7 and July 13, 2011. If he had a medical need during the lockdown he should have made a sick call so as to be scheduled to be seen. He did submit a sick call on July 5, 2011, and was seen on July 8, 2011. [Doc. 21-3, at 18; *see also* Doc. 50, Table 1, at 5-6.] Skidgel disagreed with CMS's response. After an investigation, the grievance was denied. The facility clarified that Skidgel was never placed in segregation during the seven-day lockdown, and that the Medical Department entered the pod and distributed medications to those who required it. [Doc. 21-3, at 15.]

Martin's affidavit testimony concerning educational and medical services is corroborated by documentation provided by Skidgel and Defendants, in relation to the seven-day lockdown and grievances "6 and 7." [Doc. 21-3, at 4-10, 13-21.] The Court overrules these objections.

In Skidgel's second objection [Doc. 51, at 2] he repeats the first objection, *i.e.,* that he was placed in segregation for purposes of disciplining or sanctioning him. Again, the Court overrules the objection for the reasons set forth above. Nothing in any of the documents cited by Skidgel, including Doc. 23, Ex. C-1, supports his contentions.

Skidgel's third objection is similar to the first two objections. He claims that the same document [Doc. 21-1, at 14, "Unit Lockdown Schedule"] "proves" he was "in fact segregated from

open population and punished without any means to challenge." [Doc. 51, at 3.] Again, the Unit Lockdown Schedule does not show that Skidgel was punished for misconduct. The objection is overruled for the above-stated reasons.

Skidgel's fourth objection is duplicative of the third objection. While he claims that unspecified definitions in "Black's Dictionary" [sic] support his position that he was disciplined or sanctioned during the seven-day lockdown, Skidgel's conclusory and unsupported argument does not constitute evidence sufficient to defeat summary judgment. Thus, the objection is overruled.

Skidgel's fifth objection takes issue with the Magistrate Judge's finding that Martin provided unrefuted evidence that a security incident occurred on June 29, 2011, and that because of this incident involving inmates other than Skidgel, coupled with lack of space in the segregation unit, a seven-day lockdown was imposed in the orientation pod where Skidgel was housed temporarily. Skidgel provides no evidence to the contrary concerning the unrelated June 29, 2011 security incident, nor evidence demonstrating there was a lack of space in the segregation unit at the time. His unsupported argument is insufficient to defeat summary judgment.

Skidgel also argues that Martin improperly "refused discovery of the building security logs that provide the evidence (Doc 49, page 6)." [Doc. 51, at 5.] Skidgel speculates that "building security logs" would provide evidence to support his position that he was subjected to a seven-day lockdown for his own misconduct. The Court finds no violation of discovery procedures by Defendants. First, while Defendants apparently did produce documentation in response to discovery requests by Skidgel, this Court's local rules exclude prisoner petitions, including those like Skidgel's that challenge prison conditions, from pre-trial case management procedures. D.N.M. LR-Civ 16.3(d). In order to obtain all of the pertinent evidence to determine whether summary judgment was appropriate in this case, the Court ordered Defendants to produce extensive Martinez reports,

5

and liberally allowed Skidgel to respond and provide documents in support of his position. *See* Martinez v. Aaron, 570 F.2d 317, 319 (10th Cir. 1978) *(en banc) (per curiam)* (practice of ordering Martinez report, which was approved by this circuit in 1978, allows the assembly of a record "necessary for the orderly consideration of the issues.")

Martin provided an affidavit as part of his Martinez report, stating that the June 29, 2011 security incident report contained names and gang affiliations of other inmates and described the facility's response to the incident. Martin indicated that the report should be kept confidential for security reasons and that its contents should not be disclosed to the general public or to Skidgel. [Doc. 23, Ex. C, ¶ 7.] The Magistrate Judge did not require Defendants to produce a copy of the security incident report and instead, found Martin's sworn affidavit statement sufficient. The Court overrules Skidgel's objections that Martin violated discovery procedures or the Court's Order requiring a Martinez report.

In his sixth objection, Skidgel argues that the Magistrate Judge erred by concluding that Skidgel failed to raise a genuine issue of material fact. Skidgel asserts that his "evidence does in fact have the weight and sufficiency to prevail at trial." [Doc. 51, at 4.] This objection is repetitive of arguments Skidgel previously advanced, which were soundly rejected by the Magistrate Judge. Skidgel has not pointed to any evidence in the record to support his conclusory objection, and the Court overrules it.

In his seventh objection, Skidgel contends that Martin intentionally disregarded Skidgel's medical needs, and that from June 9, 2011 through August 22, 2011, Skidgel did not obtain the medical attention he believes he required. While Skidgel characterizes this as an objection, he fails to identify any specific portion of the Magistrate Judge's recommendations to which he objects.

Instead, his objections read more like repetitive argument that he already submitted in many different pleadings and that the Magistrate Judge rejected.

For example, Skidgel again argues that Defendant Corrections Medical Services ("CMS") refused treatment of his toenail, refused to provide him a back brace as requested, and only gave him a "few packages of Tylenol" for his pain. [Doc. 51, at 5-6.] In the Magistrate Judge's attached table [Doc. 50, Table 1], the Court summarized over ten pages of medical treatment requested and received by Skidgel, including his requests for removal of his toenail and a back brace, and his complaints of pain. The Magistrate Judge further observed, based on medical testing results and treatment records, that Skidgel's numerous ailments were not nearly as serious as alleged. [Doc. 50, at 28.]

In addition, the Magistrate Judge noted that Skidgel continued to complain of the same alleged health problems, even though testing frequently did not support his allegations. The Magistrate Judge specifically reviewed the July 2011 medical record indicating CMS found no need to issue Skidgel a back brace even though he previously was dispensed a back brace. [Doc. 50, at 29.] The Magistrate Judge considered all of Skidgel's requests for treatment and the treatment that was provided before determining that Skidgel failed to raise a genuine issue of material fact concerning the elements of an Eighth Amendment violation. [Doc. 50, at 29-30.] The Magistrate Judge further noted that Skidgel's difference of opinion with his medical needs and the medical staff's diagnosis and treatment of his conditions did not support a claim of cruel and unusual punishment under the Eighth Amendment. [Doc. 50, at 21-37 and Table 1.] *See* Ramos v. Lamm, 639 F.2d 559, 575 (10th Cir. 1980) ("mere difference of opinion between the prison's medical staff and the inmate as to the diagnosis or treatment which the inmate receives does not support a claim of cruel and unusual punishment."). The Court overrules Skidgel's seventh objection.

Skidgel's eighth objection concerns the Magistrate Judge's findings regarding the cancellation of a single medical appointment on July 28, 2011. [Doc. 51, at 6.] Skidgel also argues that "there was no treatment given between June 9, 2011 through August 22, 2011." [Id.] Skidgel is mistaken. The Table attached to the Magistrate Judge's recommendations indicates a mental health clinical assessment on June 14, 2011, a normal chest x-ray on June 17, 2011, a sick call visit on June 29, 2011, at which point he was referred to a medical provider, Skidgel's refusal of medical treatment on July 6, 2011, a medical staff visit for back problems on July 8, 2011, a psychiatric assessment on July 11, 2011, a medical staff visit on August 3, 2011, and referral to a doctor for a physical examination, a medical staff visit on August 4, 2011, and referral to a psychiatric doctor, a normal left hip x-ray on August 14, 2011, a psychiatric evaluation on August 15, 2011, and Skidgel's refusal of medical treatment on August 22, 2011. [Doc. 50, Table 1.] After reviewing the requests for treatment and the treatment that was provided or refused, it defies credulity that Skidgel claims no treatment was given between June 9, 2011 through August 22, 2011.

With respect to the single canceled medical appointment on July 28, 2011, due to a scheduled event at the facility, Skidgel claims the appointment was his "one and only opportunity" to receive medical treatment. [Doc. 51, at 7.] As noted above, that contention is inaccurate. In addition, Skidgel argues that the appointment was "deliberately canceled for no reason." Defendants provided evidence in the form of affidavit testimony that the cancellation was caused by security concerns related to a scheduled event at the facility. The Magistrate Judge did not find the single cancellation amounted to a "sufficiently serious deprivation" for purposes of demonstrating an Eighth Amendment violation. This was especially true after reviewing all of the medical attention Skidgel received. The Court overrules Skidgel's eighth objection.

Skidgel's ninth objection is either nonsensical or duplicative of other objections. He summarily argues that Defendant Martin acted deliberately "without regard to the inmates [sic] well being" and knew what "the results would be in the cancellation of all appointments and programs . . . ." [Doc. 51, at 7.] As noted by the Magistrate Judge, Skidgel provides nothing more than summary and self-serving argument rather than actual evidence of deliberate indifference to Skidgel's health or safety. The Court overrules Skidgel's ninth objection.

In his tenth objection, Skidgel again provides repetitive argument. He objects to the Magistrate Judge's findings on pages 21-24, but those pages of the recommendations primarily address the parties' briefing and the pertinent legal standards. The Court cannot determine what exactly Skidgel challenges regarding these pages of the recommendations and therefore, overrules all unsupported and unspecified objections.

Skidgel summarily claims that the "lack of any treatment" for his "infirmities" constitutes cruel and unusual punishment. [Doc. 51, at 7.] However, Skidgel cannot defeat summary judgment by merely providing legal conclusions. *See, e.g.,* Curtis v. State Farm Mut. Auto. Ins. Co., 621 F.Supp.2d 1122, 1126-27 (D.Colo. 2008) (court would not consider affidavits in support of summary judgment pleading that were replete with legal conclusions, opinions, self-serving or conclusory statements, and statements that are not supported by any corroborating evidence). The Court overrules the tenth objection.

In Skidgel's eleventh objection, he contends that the Magistrate Judge findings regarding the use of a top bunk bed without a ladder were erroneous, and that Skidgel had "crushed or fractured vertebrates [sic] and a double hernia and a history of poly-arthralgies [sic]." In support of these allegations, Skidgel cites "Evidence #21, 25, and 26." [Doc. 51, at 8.]

After thoroughly scouring the record[1] for what Skidgel identifies as "evidence #21, 25 and 26," the Court located and reviewed the following documents. In Skidgel's response to Defendant Martin's Martinez report, Skidgel attached a number of documents including a 2-page "statement of account" for Skidgel at NENMDF, that he noted in handwriting at the bottom of the pages as "evidence #21." [Doc. 39, at 14-15.] Nothing on this 2-page list of statements indicates an injury or testing or medical treatment. The Court finds that "evidence #21" does not advance any of Skidgel's arguments.

In his response to Defendants' Phillips and CMS's Martinez reports, Skidgel labeled two one-page documents as "evidence #25" and "evidence #26." [Doc. 41-1, at 1, 2.] The first document contains "interdisciplinary progress notes" from the New Mexico Corrections Department for Skidgel, dated June 22, 2009. [Doc. 41-1, at 1.] The handwritten notes by a medical provider appear to recount Skidgel's subjective medical history. They state, in part, that Skidgel suffered an injury in a fight in 2006 - "low back pain." His RIH (right hernia?) was repaired in 2007. His LIH (left hernia?) was repaired in 1976. Skidgel stated that if he moved or twisted "wrong" he would fall. He "hurts badly. Has waist belt, usually helps low back pain." He had suffered two bouts of incontinence. Skidgel told the provider that he felt something slip in his back when he was weight lifting in 2007, and that his pain was not bad if he did not do anything. Skidgel had also jumped out of a helicopter in the Marines. Too much Ibuprofen irritated his stomach, and Zantac caused constipation. Naproxen once a day did not help.

---

[1] While the Court elected to search the record for Skidgel's obscure cites, it is not required to do so. *See, e.g.* Gross v. Burggraf Constr. Co., 53 F.3d 1531, 1546 (10th Cir. 1995) (court "will not search the record in an effort to determine whether there exists dormant evidence which might require submission of the case to a jury.") (*citing* United States v. Dunkel, 927 F.2d 955, 956 (7th Cir.1991) ("Judges are not like pigs, hunting for truffles buried in briefs.")).

Upon examination, the medical provider found that his heart sounded normal and his lungs were clear. His quad reflexes were 2+, and his strength and sensation were in tact in the left extremities. He was assessed with chronic low back pain, and pain and numbness across the back. An x-ray from 2007 probably indicated an old compression fracture. There was slight degeneration at L3-4. He was prescribed various medications in June 2009. [Doc. 41-1, at 1.]

The "problem list," identified by Skidgel as "evidence "26" [Doc. 41-1, at 2] lists a number of medical issues dating back to 1990 or 1992. It is not clear who completed the list. The most recent problem listed was "hearing deficit" in December 1993. It appears from this form that Skidgel refused a physical exam in August 1990. Again, none of this "evidence" advances his arguments that Defendants failed to provide proper treatment to Skidgel or that they were deliberately indifferent to his serious medical needs. Skidgel fails to raise a genuine issue of material fact with respect to these claims. The Court overrules the objections.

Skidgel's twelfth objection includes argument that the Magistrate Judge's findings were erroneous regarding Skidgel's "crowded waiting room time" for medical appointments. [Doc. 51, at 9.] The Magistrate Judge found no evidence to support Skidgel's claims that he suffered constitutional violations for having to wait in a crowded room for two hours or more before being seen by health care providers. Not only did Skidgel fail to demonstrate that any delays in medical treatment resulted in substantial harm to him, the Magistrate Judge correctly noted that patients commonly wait for long periods in crowded waiting rooms to be seen for medical treatment. [Doc. 50, at 30-31.]

Skidgel further argues in the objections that "[t]his strategy to reduce the work load is still a contention for many inmates." [Doc. 51, at 9.] His argument fails to raise a genuine issue of

11

material fact concerning the elements of an Eighth Amendment claim. The Court overrules Skidgel's twelfth objection.

It appears that Skidgel identifies two separate objections as "No. 13." [Doc. 51, at 9.] In the first objection, he appears to take issue with the Magistrate Judge's finding that Skidgel supplied no evidence that he was disciplined for filing grievances. [Doc. 50, at 32.] Skidgel argues that he "only stated he was treated with discipline action" and that he did in fact "submit evidence as to the untimely return of grievances." [Doc. 51, at 9.] Skidgel's objections are unclear, but the Court located no evidence to demonstrate that Skidgel was disciplined for filing grievances. As accurately observed by the Magistrate Judge and as documented in Skidgel's many pleadings, he filed numerous repetitive grievances, without ever being prevented from doing so. Skidgel failed to raise a genuine issue of material fact with respect to a potential denial of access claim. The Court overrules his objections.

The second objection identified as number 13 argues that Dr. Todd Wilcox's affidavit testimony concerning the applicable medical standard of care was "ludicrous at best" and "mistaken." [Doc. 51, at 9.] Again, Skidgel's personal disagreement with the medical expert's opinion is insufficient to raise a genuine issue of material fact concerning the applicable medical standard of care. The Court overrules both objections identified as number thirteen.

In Skidgel's fourteenth objection, he argues that the Magistrate Judge was incorrect in finding that Defendants persisted in attempting to provide medical care to Skidgel and that Skidgel refused medical treatment. [Doc. 51, at 9; Doc. 50, at 36.] Skidgel states that he "never refused a <u>valid or approved</u> appointment for treatment." [Doc. 51, at 9] (emphasis in original). The medical record documents numerous occasions when Skidgel rejected medical treatment. [Doc. 50, Table.] The fact that Skidgel attempts to argue he refused invalid or unapproved appointments does not raise

a genuine issue of material fact concerning a possible liberty interest, a tort claim, or a constitutional violation. As appropriately stated by the Magistrate Judge, "to follow Skidgel's instructions to provide no medical care or medical appointments, would subject prison officials to a deliberate-indifference claim." [Doc. 50, at 36-37.] The Court overrules Skidgel's fourteenth objection.

The fifteenth objection primarily argues that the Magistrate Judge's recommended disposition is incorrect. [Doc. 51, at 10.] In addition, Skidgel repeats his inaccurate position that he received no medical treatment between June 9, 2011 and August 22, 2011. To the extent that his unsupported argument can be considered an objection, the Court overrules the fifteenth objection

In sum, the Court agrees with the Magistrate Judge's analysis and recommendations and overrules all of Skidgel's objections for the reasons stated above.

IT IS ORDERED THAT:

(1) The MAGISTRATE JUDGE'S ANALYSIS AND RECOMMENDED DISPOSITION [Doc. 50] are adopted by the Court;

(2) Defendants' motions for summary judgment are GRANTED, and

(3) This action and Skidgel's civil rights' or tort complaint are DISMISSED with prejudice.

_____
UNITED STATES DISTRICT COURT